47 CCPA

**ESSO STANDARD OIL COMPANY**

v.

**E. F. DREW & CO., Inc.**
**Patent Appeal No. 6538.**

United States Court of Customs and Patent Appeals.
April 6, 1960.

Mead, Browne, Schuyler & Beveridge, William E. Schuyler, Jr., Andrew B. Beveridge, Washington, D. C. (Francis C. Browne, Washington, D. C., of counsel), for appellant.

Bierman & Bierman, Harry C. Bierman, New York City (Jordan B. Bierman, New York City, of counsel), for appellee.

Before WORLEY, Chief Judge, and RICH, MARTIN, and SMITH, Judges.

WORLEY, Chief Judge.

This appeal is from the decision of the Trademark Trial and Appeal Board of the United States Patent Office, dismissing an opposition by appellant to appellee's application for registration of "Acto-Vate" as a trademark for water softeners. The opposition was based on a number of prior registrations of the trademark "Acto," owned by appellant, and on prior use of that mark on petroleum sulphonates for various industrial purposes. It is not disputed that appellant's registrations and use of the "Acto" mark preceded any use of "Acto-Vate" by appellee.

While appellee's evidence indicates that it applies the mark only to a specific composition used in laundering, and appellee has requested leave to amend its application to limit the goods to "sequestering agents for use as adjuncts to detergents in laundering operations," the application is not now so limited and we must therefore consider it as embracing "water softeners" generally, that being the present designation of the goods to which the "Acto-Vate" mark is applied.

Appellant's registrations include petroleum sulphonates and other products to which the "Acto" mark is applied, and for which a wide variety of uses are stated in the registrations, but none of them makes reference to use as a water softener nor, in our opinion, to any use closely related to water softening. Accordingly, the registrations are not so pertinent to appellee's application as is the evidence of actual use, in which reference is made to water softening.

Appellant's evidence shows that it has marketed under its "Acto" mark petroleum sulphonates which it has recommended for a wide variety of uses including "water treatment" and "softener (industrial water)." There is no evidence, however, that any "Acto" product has been sold for use, by itself, as a water softener; rather, as stated by the board, they appear to have been sold "for use as ingredients in the manufacture of a wide variety of chemical

compounds including industrial water softeners, and preparations for dry cleaning and laundering."

The record indicates that "Acto" sulphonates are normally sold in large quantities and are used by the purchasers as ingredients of other products which they either use themselves or sell under some other name. Applicant's water softener, on the other hand, is sold in relatively smaller quantities and exclusively to laundries. It is true that trade practices may vary in the future, but we agree with the board that opposer's "Acto" products, so far as they have water softening properties, are essentially ingredients in the manufacture of various products, whereas water softeners *per se* would usually be sold to the ultimate consumer.

It is conceivable that the same purchaser might buy both an "Acto" sulphonate and "Acto-Vate" water softener, but that would certainly not be expected to occur in many instances. Such a purchaser, moreover, would in all probability be a discriminating one since he would be buying specialized products in a technical field and, at least in the case of the "Acto" product, he would probably be buying in comparatively large volumes.

It is also to be noted that the marks are not *identical* and that "Acto," which is the part common to them, is not purely arbitrary but is suggestive of action or activation.

 Upon consideration of all the circumstances of this case, including the specfic differences in the goods, the methods of marketing, and the marks themselves, we agree with the board that sale of the goods of the parties under their respective marks would *not be likely to* cause confusion within the meaning of Section 2(d) of the Lanham Act (Trademark Act of 1946), 15 U.S.C.A. § 1052 (d).

Appellant also contends that appellee should be denied registration because of its failure to produce its president, one E. F. Drew, as a witness upon demand of appellant. It appears that Drew was abroad when the demand was made, and that appellee offered to consent to a postponement of the completion of appellant's testimony until his return if advised as to the nature of the testimony expected, and if such testimony appeared proper and necessary. Apparently appellant did not seek such a postponement. In our opinion those circumstances are not grounds for refusing registration of appellee's mark.

The decision is affirmed.

Affirmed.